United States District Court
Western District of Wisconsin

DOC NO
REC'D/FILED
2017 APR 27 AM 9: 28

Matthew LaBrec #531236
Columbia Correctional Institution
2925 Columbia Drive
P.O. Box 900
Portage, Wisconsin 53901-0900,

PETER OPPENEER
CLERK US DIST COURT
WD OF WI

Plaintiff,

V.

Case No. 16-CV-774-jdp

Michael Dittman, Warden
2925 Columbia Drive
P.O. Box 900
Portage, Wisconsin 53901-0900

Lindsay Walker, Unit Manager
2925 Columbia Drive
P.O. Box 900
Portage, Wisconsin 53901-0900

LT. Cartegena, Lieutenant
2925 Columbia Drive
P.O. Box 900
Portage, Wisconsin 53901-0900

Sergeant Chatman, Sergeant
2925 Columbia Drive
P.O. Box 900
Portage, Wisconsin 53901-0900

Sergeant Craft, Sergeant
2925 Columbia Drive
P.O. Box 900
Portage, Wisconsin 53901-0900

C/O II Wilson, Correctional Officer
2925 Columbia Drive
P.O. Box 900
Portage, Wisconsin 53901-0900

C/O Meeker, Correctional Officer
2925 Columbia Drive
P.O. Box 900
Portage, WI 53901-0900

Dr. Schwenn, Psychologist
2925 Columbia Drive
P.O. Box 900
Portage, Wisconsin 53901-0900

## Amended Complaint  42 U.S.C. §1983

### I.  Jurisdiction and Venue

1.) This is a civil action authorized by 42 U.S.C. §1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has Jurisdiction under 28 U.S.C. §1331 and § 1343 (a)(3).

2.) The Court is an appropriate Venue under 28 U.S.C. §1391(b)(2), because it is where the events giving rise to this Claim Occured.

3.) This Court also has Supplemental Jurisdiction over the plaintiff's State Law tort Claims Under 28 U.S.C. §1367.

## II. Plaintiff

4.) The plaintiff, Matthew LaBree, was at all times relevant to this Complaint Confined at the Columbia Correctional Institution, 2925 Columbia Drive, P.O. Box 900, Portage Wisconsin 53901-0900.

## III. Defendants

5.) Defendant, Michael Dittman is and was Warden of Columbia Correctional Institution ("Columbia") during the events stated herein, He is sued in his individual and Official Capacity.

6.) Defendant Lindsay Walker is and was a Unitmanager at Columbia in Charge of Restrictive Housing. She is sued in her individual and Official Capacities.

7.) LT. Cartegena is and was a Lieutenant at Columbia, responsible for his duties as a Security shift Supervisor. He is Sued in his individual and Official Capacities

8.) Defendant Chatman is and was a Sergeant at Columbia, responsible for the duties of said post. He is Sued in his individ- -ual and Official Capacites

9.) Defendant Craft is and was a sergeant at Columbia, responsible for the duties of said post. He is sued in his individual and Official Capacities.

10.) Defendant Wilson is and was a C/OII at Columbia, responsible for the duties of said post. She is sued in her individual and Official Capacities.

11.) Defendant Meeker is and was a C/O at Columbia, responsible for the duties of said post. He is sued in his individual and Official Capacities

12.) Defendant Schwenn is and was a Clinical Psychologist at Columbia responsible for the duties and Actions of said post. She is sued in her individual and Official Capacities.

## IV. Statement of Facts

13.) As the Warden of Columbia Correctional Institution, Dittman is responsible for developing, implementing, Modifying and/or enforcing all policies affecting operations, as well as ensuring the safety of all the inmates at Columbia.

14.) On July 20, 2016 at approximately 7:45 p.m. plaintiff LaBrec was escorted to RH-Z (segregation) by Lt. Cartegena and support staff. LaBrec asked Lt. Cartegena who his cell mate would be and informed him that plaintiff had a "pair-with care" Special Need, per Psychological Services. Lt. Cartegena replied that he did not know who it would be and that it was up to RH-Z staff and available bed space.

15.) Plaintiff LaBree was placed in RH-2 A-Lower Tier shower and was asked to comply with a strip search. LaBree asked C/O Meeker who his cellmate would be and informed Meeker about his "pair with care" status. C/O Meeker told plaintiff that he would be placed in cell #25 with inmate Patrick C. McNeely #557994.

16.) Staff and security supervisors are aware of McNeely's history of violence and assaults on his cellmates as well as being mentally unstable. Inmate McNeely had an assaultive altercation with his recent cellmate approximately one month prior to plaintiff LaBree being placed in his cell.

17.) Plaintiff was being placed in RH-2 on "TLU" (Temporary Lock-up) for a disturbance on housing unit 2 earlier in the evening.

18.) It is plaintiffs belief that due to the unsafe practice of "TLU" and segregation inmate housing together that the events took place.

19.) Plaintiff LaBree informed Lt. Cartegena and C/O Meeker that he would feel safe in a cell with either James Emerson #680696 (who was LaBree's previous cellmate) or Fredrick Morris #579941. C/O Meeker said that they could not do it. Lt. Cartegena told LaBreche could either go into cell #25 with inmate McNeely #557994, or refuse housing, and be transferred to RH-1 and be issued a conduct report.

20.) Plaintiff and inmate McNeely started to engage.

in conversation to get to know one another. Inmate McNeely made comments to LaBrec such as "I don't want to get released, I'm just waiting for someone to set me off," and "I don't take shit from no-one, I'll beat them down."

21) Inmate McNeely then told Plaintiff about how he and his previous cellmate got into a fight, and how he (McNeely) initiated it by striking him with a closed fist twice in the face. Plaintiff felt very uncomfortable and was intimidated at this time and no longer felt safe, and decided to ask the RH-2 Staff to move Plaintiff in the morning as it was now 3rd Shift.

22) On July 21, 2016 Plaintiff LaBrec was seen by Psychologist Dr. Persike. Plaintiff told Dr. Persike that he felt unsafe in the cell with inmate McNeely and that he needed to be moved. Plaintiff mentioned that there was two alternatives already suggested to C/O Meeker, and Lt. Cartegena.

23) Dr. Persike spoke with Plaintiff concerning whether his cellmate had addiction problems. Plaintiff stated that McNeely was a Methamphetamine User. Dr. Persike discussed having Plaintiff moved with Sgt. Craft due to these issues as it is an extremely unsafe situation for Plaintiff to be in.

24) After this meeting, Plaintiff spoke to Sgt. Craft and C/O II Wilson about being moved, and they said that they would switch Plaintiff with another inmate, so that Plaintiff would be housed with inmate Bell.

25) Plaintiff then asked how long it would be and expressed that he felt extremely uncomfortable, and feared for his safety. Sgt. Craft told Plaintiff to "Hang in there," and that they would move him soon. They then returned Plaintiff to cell #25 to the unsafe situation with inmate McNeely.

26) Plaintiff was still not moved by the time that 2nd Shift arrived, and Sgt. Craft and C/O II Wilson left for the day.

27) Plaintiff informed Sgt. Chatman during the passing of forms that on 1st Shift he was supposed to be moved in to a cell with inmate Bell. Sgt. Chatman said Plaintiff would have to talk to 1st Shift in the morning, and that he did not do moves.

28) Plaintiff then advised Sgt. Chatman of the situation, that he did not feel safe, and that he (Plaintiff) was a "Pair With Care" per Psychological Services Unit. Sgt. Chatman once again stated that he didn't do moves.

29) Plaintiff alerted C/O II Kratz that he needed to talk to someone from Psychological Services and that he did not feel safe. Plaintiff was crying at this time and having an anxiety attack. C/O II Kratz said he would call P.S.U. and let them know.

30) Plaintiff asked C/O Meeker if he would move him as it was not safe for him with McNeely. C/O Meeker stated that they could not move Plaintiff and that he would just have to deal with it. Plaintiff again requested P.S.U.

31) Dr. Schwin came to RH-2 A-Lower Tier to speak to Plaintiff about his emergency. Plaintiff asked to be pulled out of his cell to discuss his problem with confidentiality. Plaintiffs request was denied so he was forced to speak cell-side.

32) Plaintiff informed Dr. Schwin that he did not feel safe in the cell with inmate McNeely and that he was supposed to be moved after conversations with Sgt. Craft, C/O II Witson, and Dr. Persike on 1st Shift.

33) Plaintiff told Dr. Schwin that he was extremely nervous and scared, and that he had already had one anxiety attack.

34) Dr. Schwin asked Plaintiff what she could

Case: 3:16-cv-00774-jdp   Document #: 1   Filed: ~~1/1/1/1/1~~   Page ~~12~~ of ~~14~~

could do to help him. Plaintiff replied that he needed to be moved. Plaintiff stated that he was not safe and that he could not be in cell #25 with McNeely because something bad would end up happening.

35) Dr. Schwin asked Plaintiff to be specific as to what would happen. Plaintiff said he was unable to, as he could not predict his cellmates actions. Dr. Schwin left the tier.

36) Sgt. Chatman, C/O II Kratz, C/O Meeker, and Dr. Schwin all refused to move Plaintiff from the unsafe, and volatile situation that he was in.

37) On July 22, 2016 Plaintiff had a follow up Psychological Services meeting with Dr. Norge, as Dr. Persike was not in the institution that day.

38) Plaintiff spoke at length with Dr. Norge in the RH-2 dayroom. Plaintiff told Dr. Norge how inmate McNeely has a history of being aggressive and violent with cellmates.

39) Plaintiff told Dr. Norge that inmate McNeely had been speaking about how he did not want to leave prison, as he was homeless. Inmate McNeely stated that he was not going to "Take any shit."

40) Dr. Norge told Plaintiff that he would see if

they would move him. Plaintiff stated that it needed to happen, as he did not believe he would make it through the weekend. Plaintiff told Dr. Norge once again that he was not safe.

41) Plaintiff was taken out of his cell to see Unit Manager Lindsay Walker to be offered a Uncontested Major Disposition for Plaintiffs T.L.U. Placement. Plaintiff then asked Walker why her staff were not following the "Pair With Care", by not moving him to a different cell.

42) Plaintiff told Walker that he did not feel safe in cell #25 with inmate McNeely. Plaintiff told Walker that he had been trying to get moved since July 21, 2016 on 1st shift. C/O Wilson was present during this exchange.

43) Walker told Plaintiff that she was not going to discuss anything but his conduct report with him. When Plaintiff once again stated he was not safe and afraid she said that there was nothing she could do about it and that the Plaintiff should not come to segregation.

44) Plaintiff was then returned to cell #25 where he remained until the incident on Sunday July 24, 2016 at approximately 2:30 a.m.

45) On July 24, 2016 at approximately 2:30 a.m. Plaintiff was threatened by inmate McNeely, and was subsequently stabbed in his right shoulder, left shoulder, and behind his left ear.

46) Plaintiff also suffered abrasions to his right cheek and the right side of his rib cage. Plaintiff had a severly swollen and cut upper lip on the left side. All of these injuries were done to Plaintiff LaBrec by inmate Patrick McNeely because of deliberate indifference, and negligence resulting in a failure to protect Plaintiffs safety and violating his 8th Amendment rights.

## V.   Exhaustion Of Administrative Remedies

47.   On July 28, 2016 Inmate Complaint Number CCI-2016-15934 was filed by Plaintiff.

48.   On September 12, 2016 Inmate Complaint Examiner I. Hart recommended that Plaintiffs Complaint be Rejected.

49.   On September 13, 2016 Plaintiff filed a Request For Review of Rejected Complaint.

50.   On September 19, 2016 the Reviewing Authority Michael Dittman affirmed the decision to Reject

the plaintiffs Complaint.

## VI. Notice of Claim Requirement

51.) On October 25th, 2016 Plaintiff executed and had Notorized and Processed Upon the States Attorney General, a Notice of Claim Covering all state Law tort claims Complained of herein.

52.) Plaintiff mailed the Notice of Claims by Certified mail, Receipt Numbers; 7012 2920 0003 7787 786, And 7012 2920 0000 3787 755. Both of these Notice of Claims Fulfill the requirement of Wisconsin state statutes §893.82.

## VII. Claims

53.) Defendants Dittman, Walker, and Cartegena Failed to do their duty by enforcing DAI policies regarding "pair with Care" double Celling, the direct result of which was plaintiffs injury, this Constitutes Negligence under Wisconsin State law torts.

54.) Defendants Meeker, Wilson, and Schwenn were Deliberately indifferent to plaintiffs serious harm risk, by Not removing plaintiff From his place of housing this Constitutes an Eighth Amendment Violation of the United States Constitution.

55.) Defendants Walker, Meeker, Wilson, Chatman, Craft were Negligent by failing to protect Inmate From Assault by Plaintiffs Cellmate After being warned of Said Fact. This Constitutes the tort of Negligence Under Wisconsin State Law.

56) Defendant Schwenn, after being told by Plaintiff in P's 31 through 35 that he did not Feel Safe, told her that he needed

to be moved, and was ignored due to not being specific as to the exact threat see Velez V. Johnson, 395 F. 3d 732, 736 (7th Circuit 2005) Schwenn was Deliberately Indifferent Constituting a Violation of plaintiff's right to be Free From Cruel and Unusual Punishment. This also Constitutes the tort of Negligence Under Wiscon- -sin State Law.

57.) Defendants Walker, Chatman, Craft, Meeker, and Wilson were Deliberately indifferent to plaintiff's Serious risk of harm this resulted in Physical, Mental, Emotional harm, Mental Anguish, and Anxiety, as a result of Defendants Decisions. This Constitutes an Eigth Am- endment Violation of the Constitution of the United States.

## VIII. Relief Requested

58.) A: Plaintiff LaBrec Seeks Compensatory Damages For his Physical, Mental, and Emotional harm against all Defendants in the Amounts of $75,000.00 each.

B: Plaintiff LaBrec Seeks an Additional $150,000.00 in Punitive damages against Defendants Lindsay Walker, Chatman, Craft, and Michael Dittman.

C: Plaintiff's Costs for this Action

D: A jury trial on all Claims tryable by Jury.

E: Any Additional Relief this Court deems Just and Proper.

Executed under penalty of purjury I declare that the foregoing is true and correct, except as to matters alleged on infor-mation and belief, and, as those, I believe them to be true, in accordance with 28 U.S.C. § 1746

    Respectfully submitted this 19th day of April 2017

Matthew L. LaBrec
Pro se Plaintiff

Matthew LaBrec #531236
Columbia Correctional Institution
2925 Columbia Drive
P.O. Box 900
Portage, WI 53901-0900