IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW LABREC,

                Plaintiff,

v.

LINDSAY WALKER, JASON CHATMAN, JOSHUA CRAFT, DEBRA WILSON, and DUSTIN MEEKER,

                Defendants.[1]

OPINION & ORDER

16-cv-774-jdp

---

      Pro se plaintiff and prisoner Matthew LaBrec is proceeding on a claim that prison staff violated his rights under the Eighth Amendment by placing him in a cell with a violent prisoner and refusing to separate the two before the other prisoner assaulted him. Several motions are before the court: (1) defendants' motion for summary judgment on the ground that LaBrec failed to exhaust his administrative remedies, Dkt. 18; (2) LaBrec's motion for leave to amend his complaint, Dkt. 25; (3) defendants' motion to screen the amended complaint, Dkt. 33; (4) LaBrec's motion for leave to file a supplemental brief in opposition to defendants' summary judgment motion, Dkt. 36; (5) LaBrec's motion for sanctions, Dkt. 42; and (6) defendants' motion to stay discovery and other proceedings, Dkt. 47. For the reasons explained below, I will deny the motion for summary judgment and the motion for leave to file a supplemental brief; grant the motion for leave to amend the complaint and for screening of the complaint; deny the motion for sanctions; and deny the motion for a stay.

---

[1] I have amended the caption to reflect defendants' full names as identified in their answer. Dkt. 13.

## BACKGROUND

On or about July 24, 2016, LaBrec filed an inmate complaint on the issue of "failure to protect safety." He alleged that prison staff had placed him in the same cell with a prisoner who has a history of violence, that staff ignored LaBrec's statements that he did not feel safe and wanted to be moved, and that the other prisoner stabbed him multiple times with a pen. In his request for relief, he asked for both a change in prison policy and money damages for his injuries.

On or about August 10, 2016, while a decision on his inmate complaint was pending, LaBrec received a conduct report for "aggravated assault" and "possession, manufacture, or use of a weapon" related to an altercation between LaBrec and his cell mate on July 24, 2016. According to the conduct report, an officer came to LaBrec's cell after hearing "banging and loud yelling." Dkt. 20-1. The officer observed that LaBrec was "covered in ink" and had "small wounds on his face, neck area, and body area." *Id.* He also observed that LaBrec's cell mate was holding a pen. LaBrec accused the cell mate of stabbing him. The officer left to get assistance and when he came back, LaBrec's cell mate was lying face down on the ground and bleeding. LaBrec said, "I put him to sleep." *Id.* at 2.

On August 29, 2016, LaBrec had a disciplinary hearing. A hearing officer found LaBrec guilty of aggravated assault but not guilty of the weapons charge, observing that LaBrec admitted to punching his cell mate in the face but that the weapons charge was not supported. LaBrec did not appeal the decision.

In a decision dated September 12, 2016, the inmate complaint examiner rejected LaBrec's inmate complaint that he had filed on July 24. The examiner explained:

> Once a conduct report is issued, the disciplinary process is invoked. Complaints which argue substantive issues regarding the

> conduct report are outside the scope of the ICRS as noted under DOC 310. After receiving the disciplinary hearing paperwork, an appeal may be sent directly to the Warden. The ICE may only address procedurally based allegations of error contained in complaints filed AFTER the Warden's decision is made on appeal, following DOC 310.08(3). The Warden has not yet rendered a decision on the appeal of the conduct report. Consequently, this complaint falls out of the scope of the ICRS.

Dkt. 20-3, at 2. The warden affirmed the decision to reject the complaint.

ANALYSIS

A. Exhaustion

1. Legal standard

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006).

To satisfy § 1997e(a), a prisoner must complete each step in the administrative process "in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). If a prisoner fails to exhaust his administrative remedies before filing his lawsuit, the court must dismiss the case, *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999), but the defendants have the burden to prove that the prisoner did not exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199 (2007).

2. Overview of defendants' argument

In this case, it is undisputed that LaBrec filed an inmate complaint in which he alleged that prison officials failed to protect him from his cell mate, which is the same claim he is

3

raising in this case. But defendants contend that the inmate complaint review system, or ICRS, was the wrong place for LaBrec to exhaust his administrative remedies. Rather, according to defendants, LaBrec needed to raise the issue in the context of his disciplinary proceedings. Because LaBrec did not appeal the disciplinary decision after he was found guilty of assaulting his cell mate, defendants argue that LaBrec failed to properly exhaust his administrative remedies.

Defendants' argument relies on Wis. Admin. Code § DOC 310.08(2)(a), which states that a prisoner may not use the ICRS to raise "[a]ny issue related to a conduct report, unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303." The argument has two parts. First, they say that LaBrec's inmate complaint was "related to" the conduct report because he alleged in the complaint that "he 'acted in self-defense' in the altercation, an issue which goes directly to the substance of his conduct report and its disposition." Dkt. 19, at 4. Second, they say that LaBrec did not exhaust the disciplinary process because he did not file an administrative appeal of the disciplinary decision to the warden, as permitted under Wis. Admin. Code § DOC 303.82(1).

I disagree with both parts of defendants' argument. And even if I agreed with defendants' interpretation of § DOC 310.08(2)(a), I would conclude that LaBrec had no "available" administrative remedy within the meaning of § 1997e(a) because the examiner did not reject LaBrec's complaint until after LaBrec's deadline for filing a disciplinary appeal expired, leaving him no options for completing the grievance process.

3. "Related to"

The phrase "related to" is vague and potentially very broad. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) ("ordinary meaning of words 'related to' is a broad one")

4

(alterations omitted). Although the phrase is not defined in the regulation, one court has given the phrase a common-sense limiting interpretation, stating that the relevant question is whether the subject of the inmate complaint "would have been germane to the question of [the prisoner's] guilt or innocence" of the conduct report. *Rivera v. Lindmeier*, No. 13-cv-124, 2013 WL 6806188, at *2 (E.D. Wis. Dec. 20, 2013). *See also id.* at *3 ("On the whole, what the regulations mean is that inmates should not use the ICRS grievance process to contest the merits of their disciplinary actions."). Defendants do not offer their own interpretation, but the interpretation in *Rivera* is reasonable and seems to be consistent with defendants' view that LaBrec's complaint was "related to" his conduct report because he raised the issue of self-defense in the complaint, an issue that they say could have affected the "disposition" of the disciplinary proceedings.[2]

An initial problem with defendants' argument is that defendants do not cite any authority for the view that a claim of self-defense could have affected the outcome of the disciplinary proceedings. Because "inmates do not have a constitutional right to raise self-defense as a defense in the context of prison disciplinary proceedings," *Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011), there would have to be a prison rule that allowed LaBrec to raise

---

[2] *Rivera* appears to be consistent with a number of other cases as well. *Sanders v. Lundmark*, No. 11-cv-206-slc, 2011 WL 4699139, at *4 (W.D. Wis. Oct. 5, 2011) (Crocker, M.J.) (§ DOC 310.08(2)(a) applied because prisoner "would likely have a complete defense to the minor conduct violation" if he prevailed on issue raise in his inmate complaint); *Lindell v. Frank*, No. 05-cv-3, 2005 WL 2339145, at *1 (W.D. Wis. Sept. 23, 2005) (Crabb, J.) (§ DOC 310.08(2)(a) applied because prisoner's "claims of wrongdoing are tied directly to the validity of the conduct reports"). *But see Vasquez v. Hilbert,* No. 07-cv-723, 2008 WL 2224394, at *4 (W.D. Wis. May 28, 2008) (Crabb, J.) (concluding that prisoner acted reasonably by waiting until disciplinary proceedings were complete to file inmate complaint about medical issue that was discussed in conduct report because phrase "related to" suggests a "broad standard" and is "not . . . defined in the regulations").

5

that defense, but defendants do not cite such a rule. And although the disciplinary records show that LaBrec did claim at his hearing to have acted in self-defense, the decision of the hearing officer did not include a determination on that issue, Dkt. 20-1, at 5–6, suggesting that it was irrelevant to his decision. In fact, nothing in the decision rejects LaBrec's allegation that the other prisoner stabbed LaBrec before LaBrec fought back.

But even if I assume that the issue of self-defense was relevant to the disciplinary proceedings, LaBrec's inmate complaint is not "related to" the conduct report under the standard in *Rivera*. Defendants have taken one stray remark in the inmate complaint and attempted to characterize that remark as the basis for the complaint, but it is clear from a review of the complaint that LaBrec was not challenging the conduct report or otherwise contending that he could not be disciplined for his own conduct. To begin with, LaBrec filed his inmate complaint more than two weeks *before* he received a conduct report, so he could not have been challenging a conduct report that did not yet exist. In their reply brief, defendants say that LaBrec was "likely anticipating disciplinary action," Dkt. 34, at 2, but there is nothing in LaBrec's inmate complaint suggesting that he is trying to use the complaint as a preemptive strike against a potential conduct report.

In describing the "issue" raised in the complaint, LaBrec said nothing about potential discipline. Rather, he said the issue was "failure to protect safety" and that he had "spoke[n] with many individuals about being moved" to a different cell because he "did not feel safe." Dkt. 20-3, at 8. In the "details" section of the complaint, LaBrec described three things: (1) his objections to being placed in a cell with the other prisoner because of that prisoner's "extensive history of violence between him and cell mates"; (2) his unsuccessful efforts to be moved to a different cell; and (3) the injuries he sustained as the result of the assault. *Id.* Although he wrote

that he "used self defense" against the other prisoner, that had nothing to do with the problem alleged in the complaint, which was placing and keeping him in the same cell with a dangerous prisoner. Thus, LaBrec was "not us[ing] the ICRS grievance process to contest the merits of" his conduct report and the issue he raised in his complaint was not "germane to the question of [his] guilt or innocence," *Rivera*, 2013 WL 6806188, at *2, so his inmate complaint was not "related to" the conduct report and he was free to use the inmate complaint review system to seek redress.

### 4. "unless the inmate has exhausted the disciplinary process in accordance with ch. DOC 303"

Defendants' contention that LaBrec's inmate complaint was filed improperly is contingent on a conclusion that LaBrec had not "exhausted the disciplinary process in accordance with ch. DOC 303," as required by § DOC 310.08(2)(a), because he did not appeal the disciplinary decision to the warden. But that view is based on an assumption that the disciplinary process serves as a complete substitute for the inmate complaint review system whenever a prisoner wants to grieve an issue that is "related to" a conduct report.

Even if I assume that the phrase "related to" has a broad meaning in § DOC 310.08(2)(a), it does not follow that a prisoner can raise any issue "related to" a conduct report in a disciplinary appeal. Rather, under § DOC 303.82(1), a prisoner may appeal the "disciplinary decision." Importantly, defendants do not contend that LaBrec could have challenged his disciplinary decision on the ground that defendants placed him in the cell with a dangerous prisoner and then refused LaBrec's requests for a transfer. This raises a key question that defendants do not answer: what is a prisoner to do if he agrees that he is guilty (or simply does not believe there is any basis for appealing his disciplinary decision), but he

7

wants to grieve an issue that may be "related to" his conduct report? The regulations do not provide a clear answer either, but there is only one answer that is fair and sensible. Because the disciplinary process cannot provide a remedy in that situation, it follows that the prisoner has "exhausted the disciplinary process in accordance with ch. DOC 303" within the meaning of § DOC 3010.08(2)(a). *See also Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) ("[W]here the relevant administrative procedure lacks authority to provide any relief, the inmate has nothing to exhaust.") (internal quotations omitted).[3]

One reading of § DOC 310.08(2)(a) is that it acts as a sort of "stay" on an inmate complaint that is "related to" a conduct report but cannot be raised in the disciplinary proceedings, and that the stay lasts until the disciplinary process is finished, regardless how far the prisoner takes that process. Another reading is that § DOC 310.08(2)(a) simply prohibits most inmate complaints that are "related to" a conduct report in light of § DOC 310.08(3), which says that, even after the disciplinary appeal process is finished, a prisoner may file an inmate complaint only with respect to the procedure used during the disciplinary process. *Shaw v. Jahnke*, 607 F. Supp. 2d 1005, 1008 (W.D. Wis. 2009) ("Any application of § DOC 310.08(2)(a) must be read in conjunction with § DOC 310.08(3) . . . . Because plaintiff's grievance did not raise a procedural issue, § DOC 310.08(3) suggests that he could not use the grievance process at all for the purpose of complaining about [an issue related to the conduct report."]). But regardless whether § DOC 310.08(2)(a) stays or prohibits inmate complaints that are "related to" a conduct report, it would make no sense to force a prisoner to file a

---

[3] This question would be unlikely to arise under *Rivera*'s interpretation of the phrase "related to." If that phrase is limited to inmate complaints that are "germane to the question of [a prisoner's] guilt or innocence," then a prisoner is not left wondering how to raise issues that arise out of the same facts as the conduct report but do not challenge the disciplinary decision.

pointless disciplinary appeal that can provide him no relief simply so that he can file an inmate complaint after the appeal is resolved. *White v. Bukowski*, 800 F.3d 392, 395 (7th Cir. 2015) ("[H]ow could a prisoner be expected to file a grievance that would be academic because no response would benefit him or her in the slightest? . . . [I]f one has no remedy, one has no duty to exhaust remedies.").

Under § DOC 303.82(1), a prisoner has 10 days to file an appeal with the warden after receiving a disciplinary decision. In this case, LaBrec received his decision on August 29, 2016, which means that his deadline for appeal expired on September 8, 2016. Thus, the inmate complaint examiner was simply wrong when he rejected LaBrec's grievance on September 12, 2016, on the ground that his disciplinary appeal was pending. At that point, LaBrec had completed the disciplinary process, so the examiner should have considered the complaint on the merits.

### 5. Available remedy

The timing of the examiner's decision provides yet another ground for concluding that LaBrec exhausted his available administrative remedies. As noted above, at the time LaBrec filed his inmate complaint on July 24, 2016, he had not yet received a conduct report, so the complaint was properly filed under any interpretation of § DOC 310.08(2)(a). Because a prisoner has only 14 days from the date of the relevant incident to file an inmate complaint, Wis. Admin. Code § DOC 310.09(6), he cannot wait to see whether a conduct report may be forthcoming.

Even if I were to accept the general proposition that § DOC 310.08(2)(a) can apply when a conduct report is issued after the prisoner files his inmate complaint *and* that LaBrec's complaint was related to his conduct report *and* that LaBrec could be required to file a

disciplinary appeal before filing a grievance, prison staff would still have to give LaBrec a meaningful opportunity to complete the grievance process. If the examiner had rejected LaBrec's complaint while the disciplinary proceedings were ongoing, then LaBrec would have had an opportunity to file a disciplinary appeal, if that's what the examiner directed to him to do. But by waiting to reject the complaint until LaBrec's deadline for filing a disciplinary appeal had expired, the examiner deprived LaBrec of *any* avenue of relief.

Regardless whether the examiner's conduct was intentional, a court cannot dismiss a claim for a prisoner's failure to exhaust his administrative remedies when the prisoner's failure is the direct result of prison staff's own conduct. *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006)("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality."); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting."). Particularly because the regulations are ambiguous as to how the disciplinary and grievance processes overlap, LaBrec could not be expected to know that he would forfeit his claim if he did not file a disciplinary appeal while his inmate complaint was pending. *Vasquez v. Hilbert*, No. 07-cv-723, 2008 WL 2224394, at *4 (W.D. Wis. May 28, 2008) ("[W]hen prison officials fail to 'clearly identif[y]' the proper route for exhaustion, they cannot later fault the prisoner for failing to predict the correct choice.") (quoting *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005)). *Cf. Ross,* 136 S. Ct. at 1859 ("When rules are so confusing that no reasonable prisoner can use them, then they're no longer available.") (internal quotations and alterations omitted).

In sum, I conclude that defendants have failed to meet their burden to show that LaBrec failed to exhaust his available administrative remedies. Because I did not need to consider LaBrec's supplemental brief, I will deny his motion to file the supplemental brief as moot.

**B. Amended complaint**

LaBrec has filed a motion for leave to amend his complaint along with a proposed amended complaint. Dkt. 25 and 26. Defendants do not object to the amendment, but they have filed a "request for screening" the amended complaint. Dkt. 33. That request was unnecessary because screening is required by statute. 28 U.S.C. § 1915A.

In his motion for leave to amend, LaBrec says that his only change is to add "state law tort claims" and he adds claims for negligence in his proposed amended complaint. Dkt. 25, at 1 and Dkt. 26, at 12. He does not say that he wants to bring new claims about different conduct, sue additional defendants, or otherwise change the scope of the claims on which he is proceeding. Because LaBrec alleges that he satisfied Wisconsin's notice of claim requirements and the standard for proving a negligence claim is less demanding than a claim under the Eighth Amendment, I will allow him to proceed on state law negligence claims.

This order is limited to claims against the current defendants. Although LaBrec's proposed amended complaint does not appear to include new allegations, he did not omit the claims against various officials that I dismissed from the original complaint for LaBrec's failure to state a claim upon which relief may be granted. If LaBrec is seeking to revive any claims against those individuals or bring state law claims against them, the court will deny that request. LaBrec waited nearly four months to amend his complaint after the court screened the original complaint and he identifies no reason in his motion for the delay. Despite that delay, I am allowing LaBrec to add negligence claims against the current defendants because those

11

defendants do not object and I do not otherwise see any unfair prejudice that the amendment will cause. But adding more defendants at this stage of the proceedings would delay the resolution of this case by several months while the new defendants get up to speed, so it would be unfair to bring those defendants back into the case now. *United States v. Sanford Brown, Ltd.*, 788 F.3d 696, 707 (7th Cir. 2015) (affirming denial of motion for leave to amend complaint to revive claims against dismissed defendant; plaintiff "waited forty two days before moving for leave to bring [the dismissed defendant] back into the case" and granting motion "would have returned a dismissed party . . . back into litigation when discovery had proceeded for weeks and [the other defendant] had proceeded under the assumption that [the dismissed defendant] was no longer involved"); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009)("District courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.").

**C. Sanctions**

LaBrec seeks to sanction defendants on the ground that Isaac Hart, an inmate complaint examiner, included an inaccurate statement in his declaration about the content of an ICE receipt. Dkt. 42. Defendants acknowledge that there was an error, Dkt. 43, but I will deny the motion because LaBrec points to no evidence that the error was intentional, let alone that any of the defendants were responsible for the error, and because the mistake had no bearing on the outcome of defendants' summary judgment motion.

**D. Stay**

On September 15, 2017, defendants filed a motion to "stay the current scheduling order and set new deadlines for discovery and dispositive motions deadlines until after the court rules

on the pending motion" for summary judgment. Dkt. 47. Because I have ruled on the summary judgment motion, I will deny this motion as moot. But I will give the parties a bit of extra breathing room and extend the deadline for dispositive motions on the merits until October 20, 2017.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants Lindsay Walker, Jason Chatman, Joshua Craft, Debra Wilson, and Dustin Meeker on the ground that plaintiff Matthew LaBrec failed to exhaust his administrative remedies, Dkt. 18, is DENIED;

2. LaBrec's motion for leave to amend his complaint, Dkt. 25, is GRANTED to allow him to add a negligence claim against the current defendants. The motion is DENIED in all other respects; LaBrec's proposed amended complaint, Dkt. 26, is ADOPTED as the operative pleading;

3. Defendants' motion to screen the amended complaint, Dkt. 33, is GRANTED;

4. LaBrec's motion for leave to file a supplemental brief in opposition to defendants' summary judgment motion, Dkt. 36, is DENIED as moot;

5. LaBrec's motion for sanctions, Dkt. 42, is DENIED;

6. Defendants' motion to stay discovery and other proceedings, Dkt. 47, is DENIED as moot; and

7. The deadline for filing dispositive motions is EXTENDED to October 20, 2017.

Entered September 20, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge