IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MATTHEW LABREC,

        Plaintiff,

 v.                   OPINION & ORDER

LINDSAY WALKER, JASON CHATMAN, JOSHUA    16-cv-774-jdp
CRAFT, DEBRA WILSON, and DUSTIN MEEKER,

        Defendants.

---

Pro se plaintiff and prisoner Matthew LaBrec is proceeding on claims that several correctional officers failed to protect him from an assault by another prisoner, in violation of the Eighth Amendment and state law. Defendants Jason Chatman, Joshua Craft, Dustin Meeker, Lindsay Walker, and Debra Wilson have filed a motion for summary judgment, Dkt. 73, which is ready for review. Also before the court are three procedural motions filed by LaBrec, one for assistance in recruiting counsel and two related to substituting one of the defendants. Dkt. 54; Dkt. 77; Dkt. 83.

The case arises out of an altercation between LaBrec and his cellmate. According to LaBrec, he complained over the course of several days to each of the defendants that he felt unsafe with his cellmate and wanted to be moved. He also alleges that his cellmate later attacked him without provocation, stabbing him multiple times with a pen.

Defendants tell a somewhat different story. Although they acknowledge that LaBrec asked repeatedly for a different cell assignment, they say it was because he didn't like his cellmate; they deny that he ever expressed concerns for his safety. They also say that *LaBrec* started the fight and left his cellmate "unresponsive" when it was over.

I will grant defendants' motion for summary judgment on LaBrec's Eighth Amendment claim because the differences between LaBrec's version of events and defendants' version are not material. In other words, even if I accept all of LaBrec's allegations as true, those allegations would not permit a reasonable jury to find that any of the defendants violated the Eighth Amendment. *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) ("Only disputes as to facts which are material, i.e., facts that might affect the outcome of the suit under the governing law, and genuine, i.e., disputes for which the evidence is such that a reasonable jury could return a verdict for the nonmoving party, will preclude summary judgment.") (internal quotations omitted). Under current law, a vague statement that a prisoner feels unsafe does not trigger a constitutional duty to move a prisoner to a different cell; the prisoner must explain why he feels unsafe. In accordance with 28 U.S.C. § 1367(c)(3), the court will dismiss LaBrec's negligence claims without prejudice so that he can pursue them in state court, if he wishes to do so.

I will deny LaBrec's motions. As explained below, his request to substitute is moot and his request for counsel is not supported.

MOTION FOR SUMMARY JUDGMENT

A. **Eighth Amendment**

The Supreme Court recognized in *Farmer v. Brennan*, 511 U.S. 825 (1994), that "prison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners." *See also Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). In determining whether officials violated the Eighth Amendment, the question is whether they

were "deliberately indifferent" to a "substantial risk of serious harm" to the prisoner's safety. In practical terms, a claim under *Farmer* has two elements:

(1) Were the defendants aware of a substantial risk that the plaintiff would be seriously harmed?

(2) If so, did the defendants consciously refuse to take reasonable measures to prevent the plaintiff from being harmed?

*Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005); *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997); *Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir 1996).

In this case, the focus of the parties' debate is on the first question—whether each defendant knew of a substantial risk that LaBrec's cellmate would assault him. Although it is undisputed that none of the defendants were responsible for the initial decision of placing LaBrec and his cellmate together, Dkt. 87, ¶ 26, LaBrec says that each defendant may be held liable for failing to transfer him when he complained to each of them about the assignment. The parties also debate whether each defendant had the authority to move LaBrec.

LaBrec discusses three types of evidence that could have given defendants notice that he needed to be separated from his cellmate: (1) characteristics about LaBrec and his cellmate; (2) information that defendants received from LaBrec; and (3) a note written by the cellmate. But even considering all of this evidence and drawing all reasonable inferences in LaBrec's favor, no reasonable jury could find that any of the defendants knew of a substantial risk of serious harm to LaBrec's safety. This makes it unnecessary to consider defendants' alternative argument that some of the defendants did not have authority to move LaBrec to a different cell.

1. **Characteristics of LaBrec and his cellmate**

It is undisputed that LaBrec and his cellmate did not have special housing restrictions that would have prevented them from being celled together. Dkt. 87, ¶ 46. But in his complaint, LaBrec alleged that his cellmate had a history of assaulting other prisoners and prison staff knew that. As it turns out, LaBrec's cellmate had received a conduct report for assaulting *one* other prisoner before being celled with LaBrec. Dkt. 87, ¶ 40. LaBrec does not allege that his cellmate had been involved in any other assaults.[1]

The parties dispute some of the details about the earlier assault. Defendant Walker says that the conduct report related to a fight about the cellmate's "criminal history," that Walker believed that the other prisoner was the aggressor, and that no serious injuries were involved. *Id.*, ¶ 42. LaBrec doesn't dispute Walker's account of the impetus for the earlier fight or the seriousness of the injuries, but LaBrec says that his cellmate initiated the fight "by striking [the other prisoner] in the face." *Id.* Neither side provided a copy of the conduct report.

LaBrec doesn't cite evidence that anyone other than defendant Walker knew about the earlier assault. But even if I assume that all of the defendants knew about it and that it occurred as LaBrec described, it would not show that defendants knew of a substantial risk that LaBrec's cellmate would assault him as well. "[M]any prisoners have engaged in aggressive or violent behavior, [so] the assailant must have an unusually violent history for prison officials to be

---

[1] In his declaration, LaBrec says that it is his "experience" that "all [his former cellmate] does is engage in arguments and threaten inmates and staff." Dkt. 81, ¶ 15. LaBrec doesn't provide any foundation for this statement and he doesn't describe the nature of any threatening behavior. Regardless, even if the cellmate had a history of arguing and threatening others, that conduct in and of itself wouldn't pose a danger if it didn't materialize into violence. Also, LaBrec doesn't allege that any of the defendants were aware of any behavior other than the single assault that would have raised a red flag.

required to treat [him] specially." John Boston and Daniel E. Manville, *Prisoners' Self-Help Litigation Manual* 113 (4th ed. 2010). *See also* Dkt. 87, ¶ 35 ("Almost all inmates in the Restricted Housing units [where LaBrec and his cellmate were housed] have had some history of violent behavior while in prison and are capable of serious, violent behavior at any time.").

As a general rule, one previous fight is not enough to show that a prisoner is unusually violent. *E.g.*, *Coleman v. Kernan*, No. 06-cv-1583, 2008 WL 2489131, at *4 (E.D. Cal. June 17, 2008); *Morris v. Ley,* No. 05-C-458, 2006 WL 3512955, at *6 (E.D. Wis. Dec. 5, 2006). *See also Ruefly v. Landon,* 825 F.2d 792, 794 (4th Cir. 1987) (two previous fights with other prisoners not sufficient to show that cellmate posed substantial risk to plaintiff). In *Owens v. Hinsley*, 635 F.3d 950, 953–54 (7th Cir. 2011), the court held that officers could not be held liable for failing to transfer a prisoner before being assaulted by his cellmate—even though the defendants knew that the *same prisoners* had been involved in an altercation earlier the same day—because there was no evidence of a continuing threat. In this case, the record simply does not support a finding that LaBrec's cellmate had a known propensity for violence before he assaulted LaBrec.

As for LaBrec's characteristics, it is undisputed that LaBrec was classified as a "pair with care" prisoner, but it is unclear what that means. LaBrec provides no explanation despite noting multiple times in his summary judgment materials that he had the classification. Defendants say that "security staff needed to take extra care in evaluating the choice of cellmates for" LaBrec, Dkt. 87, ¶ 44, but they do not say why. Neither side suggests that LaBrec was a member of a vulnerable group or had a history of being victimized by other prisoners.[2] In fact, it is

---

[2] LaBrec says that a previous cellmate had threatened him in 2015, but he doesn't say why, he doesn't allege that the threat had any connection to the assault at issue in this case, and he

5

undisputed that *LaBrec* had a history of assaulting staff and other prisoners. *Id.*, ¶ 32. *See also Street v. Corr. Corp. of Am.,* 102 F.3d 810, 817 (6th Cir. 1996) (plaintiff's own history of violence relevant to consideration whether he was likely to be victimized).

But even if I assume that LaBrec *was* a vulnerable prisoner, that would not be enough to show that defendants knew that his cellmate posed a substantial risk to LaBrec's safety. LaBrec does not allege either that his cellmate had a propensity for preying on more vulnerable prisoners or that he and his cellmate had a contentious history. In sum, LaBrec has not adduced evidence that anything about his or his cellmate's history or characteristics would have given defendants notice that it was not safe to house the two together.

**2. Communication between LaBrec and each of the defendants**

LaBrec does not allege that any of the defendants observed any threatening or otherwise suspicious behavior between LaBrec and his cellmate before the assault occurred on July 24, 2016. Instead, LaBrec avers in his declaration that he told each of the defendants between July 21 and July 24 that he "did not feel safe" and he wanted to be moved to a different cell. Dkt. 81, ¶¶ 10, 21, 25. But he admits that he "was unable to be specific about *why* he was not safe with" his cellmate. Dkt. 88, ¶ 30 (emphasis added). That admission is fatal to LaBrec's claim. "In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. . . . Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was

---

doesn't allege that any of the defendants were aware of the threat. Dkt. 81¶, 2–3.

in danger." *Gevas v. McLaughlin*, 798 F.3d 475, 480–81 (7th Cir. 2015) (internal quotations and alterations omitted).

In *Gevas*, the court compared cases in which the evidence had been sufficient to show the defendants' knowledge of a risk with cases in which the evidence was not sufficient. For example, in *Gevas* itself, the plaintiff alleged that he had told the defendants that his cellmate was threatening to stab him. 798 F.3d at 481–82. And in *Haley v. Gross,* the plaintiff told the defendant that his cellmate had threatened that "something crucial was going to happen" if one of them was not moved. 86 F.3d 630, 643 (7th Cir. 1996). Those allegations were sufficient because the plaintiff identified a "specific, credible, and imminent risk of serious harm." *Gevas*, 798 F.3d at 481.

LaBrec's alleged statements to the defendants were not nearly as specific as those in *Gevas* and *Haley*. In fact, his statements were nearly identical to the statements made by the prisoner in another case discussed in *Gevas*. In *Grieveson v. Anderson*, the court affirmed the dismissal of a failure-to-protect claim in which the prisoner "told jail officials only that he was afraid and that he wanted to be moved." 538 F.3d 763, 776 (7th Cir. 2008). LaBrec's allegations are also similar to those in *Olson v. Morgan*, in which the plaintiff "express[ed] his fear of [his cellmate] and request[ed] a different cell." 750 F.3d 708, 713 (7th Cir. 2014). The court of appeals affirmed the dismissal of that claim as well. *Id.*

The reasoning of these cases is that prisoners are often unhappy with their cellmates and their reasons for wanting a transfer may have nothing to do with safety. Or prisoners may honestly believe that they are in danger, but they have no basis for that belief. By requiring a prisoner to explain to staff why he believes he is not safe, it helps to show that his complaint is based on more than just discontent or paranoia. *Riccardo v. Rausch*, 375 F.3d 521, 527 (7th

7

Cir. 2004). Even when a prisoner is later assaulted and it turns out that his fear was well founded, a prison official cannot be held liable under the Eighth Amendment if he or she didn't have enough information before the assault occurred. *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) ("As it turned out, there was a cobra lurking in the grass . . . But that's not dispositive. The focus is on the defendants' subjective state of mind, and for all they knew, Dale was being harassed by a garter snake.").

LaBrec cites *Velez v. Johnson*, 395 F.3d 732 (7th Cir. 2005), for the proposition that a prisoner does not have to give "specific details of the risk." Dkt. 78, at 8. But *Velez* is not instructive. The officer in that case failed to respond to an "emergency call button," which itself is "a clear indication that an emergency [i]s at hand." *Velez*, 395 F.3d at 736. Officers generally must respond to an emergency call button despite the absence of more specific information because that type of alert is *necessarily* vague in light of the prisoner's inability to communicate more specifically with the officer. But the court in *Velez* did not suggest that, once an officer responds and is able to speak with the prisoner directly, the officer must accept the prisoner's belief that there is an emergency if one is not apparent. *See Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 680–81 (7th Cir. 2012) (door-kicking and shouting could be enough to give officers notice of emergency; more specific information "would have been conveyed had any guard heard the commotion and responded"). In this case, LaBrec *did* have an opportunity to speak with of the defendants, so he had the obligation to provide them whatever information he had supporting a conclusion that a cell transfer was necessary.

LaBrec discusses two other types of statements in his declaration. First, he says that he told defendants Craft and Wilson that his cellmate was "acting crazy." Dkt. 81, ¶ 20. LaBrec did not include that allegation in his proposed findings of fact or his brief, but even if I overlook

8

LaBrec's failure to follow the court's procedures, this allegation would not be enough to defeat defendants' motion for summary judgment. Although the statement would have provided some explanation for LaBrec's transfer request, LaBrec does not allege that he told Craft and Wilson anything specific about what his cellmate was doing. Without more context, a statement that the cellmate was "acting crazy" could mean nothing more than that the cellmate was engaging in irritating but harmless behavior. It is no more informative than other similarly ambiguous statements that the court of appeals has found to be insufficient. *Dale*, 548 F.3d at 569 ("[The prisoner's] vague statement that inmates were 'pressuring' him and 'asking questions' were simply inadequate to alert the officers to the fact that there was a true threat at play."); *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (prisoner stated that he was "having problems" in his cellblock and "needed to be removed"). *See also Anderson v. County of La Crosse*, No. 08-cv234–bbc, 2009 WL 1139991, *5 (W.D. Wis. Apr. 27, 2009) (prisoner's complaint that another prisoner was "starting crap" with him too vague to give jail officials notice of likely assault).

Second, LaBrec's declaration includes averments about discussions he had with other prison staff members who are not defendants. For example, he avers that he told "Dr. Persike," a psychologist at the prison, that his cellmate was talking about beating up his last cellmate. Dkt. 81, ¶ 18. Persike denies this, Dkt. 68, ¶ 11, but, regardless, LaBrec has not cited any evidence that the information he provided to Persike or any of the other nondefendants was communicated to any of the defendants, so I have not considered whether the information could give notice of a substantial risk of serious harm.

### 3. Note from cellmate

LaBrec avers that his cellmate "wrote a note to officers that stated he was going to stab me." Dkt. 81, ¶ 42. But LaBrec doesn't allege that his cellmate ever gave the note to an officer, or, if he did, that any of the defendants actually saw the note before the assault occurred. The cellmate's conduct report does refer to a note, but it was discovered *after* the assault. Dkt. 72-7. Without evidence that defendants saw the note before the assault occurred, the mere fact that the cellmate may have written a note describing his intentions is not evidence that any defendant was aware of a risk to LaBrec's safety.

The bottom line is this: even if the court accepts as true everything that LaBrec avers in his declaration, no reasonable jury could find that any of the defendants knew of a substantial risk that LaBrec would be seriously harmed. Accordingly, the court will grant defendants' motion for summary judgment as to LaBrec's Eighth Amendment claim.

## B. Negligence

As for LaBrec's state-law negligence claims, the general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial. 28 U.S.C. § 1367(c)(3); *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015). Because the parties do not identify any reason that I should depart from the general rule in this case, I will dismiss LaBrec's negligence claims without prejudice to LaBrec's refiling those claims in state court.

## MOTION FOR SUBSTITUTION

On October 11, 2017, defendants filed a notice that defendant Meeker had died in August 2017. Dkt. 59. In response, LaBrec filed a motion under Rule 25 of the Federal Rules of Civil Procedure to substitute "the estate of Dustin Meeker or the proper representative if it

should not prove to be the estate." Dkt. 77. After defendants objected to LaBrec's motion on the ground that it did not comply with the requirements in Wis. Stat. § 803.10, LaBrec filed a new motion asking the court to extend the deadline for substitution. Dkt. 83.

I will deny both of LaBrec's motions as moot. Both sides included evidence and arguments about Meeker in their summary judgment filings. In his declaration, LaBrec's only allegation about Meeker's knowledge of a risk of harm is that LaBrec told Meeker that he "did not feel safe in the cell and needed to be moved." Dkt. 81, ¶ 25. As discussed above, that statement was not sufficient to give notice under the Eighth Amendment. Because Meeker did not violate LaBrec's Eighth Amendment rights, it would be pointless to go through the process of substituting a representative for Meeker.

MOTION FOR ASSISTANCE IN RECRUITING COUNSEL

A pro se litigant does not have a right to counsel in a civil case, *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), but a district court has discretion to assist pro se litigants in finding a lawyer to represent them. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). A party who wants assistance from the court in recruiting counsel must meet several requirements. *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010). First, he must show that he is unable to afford to hire his own lawyer. 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). Second, he must show that he made reasonable efforts on his own to find a lawyer to represent him. *Jackson v. County of McLean*, 953 F.2d 1070 (7th Cir. 1992). Finally, he must show that the legal and factual difficulty of the case exceeds his ability to prosecute it. *Pruitt*, 503 F.3d at 654–55.

11

LaBrec is indigent and he has shown that three lawyers denied his requests to represent him. But he has not shown that the legal and factual difficulty of the case exceeds his abilities. LaBrec's summary judgment submissions show that he is intelligent, understands law and procedure, and is capable of conducting discovery, explaining his version of events in a declaration, and making legal arguments in a brief. As for the difficulty of the case, LaBrec's claim did not require medical or other expert testimony and the standard for proving his claim is well established.

In his motion, LaBrec offers the following reasons for needing counsel: (1) he has been diagnosed with various mental health conditions, such as borderline personality disorder, antisocial personality disorder, attention deficit disorder, post traumatic stress disorder, depression, and anxiety; (2) he is housed in disciplinary separation status, which limits his access to the law library; and (3) he has been unable to take depositions. He also says that a lawyer would be helpful for engaging in settlement discussions and representing him at trial.

None of these reasons are persuasive. As an initial matter, LaBrec does not cite any evidence that he suffers from the many ailments he cites in his motion. But even if I were to assume that he does, his summary judgment filings showed no signs of impairment. Again, they were clear and thorough, showing skill and knowledge well above that of the average pro se litigant.

LaBrec's housing status did not harm him either. More legal research could not have helped him because the law does not support his claim.

Finally, LaBrec doesn't explain why he believes he needed to take depositions to prove his claim. LaBrec had personal knowledge of most of the relevant facts and other information, such as the cellmate's disciplinary history, could be obtained through written discovery. In fact,

LaBrec submitted written interrogatories to defendants, Dkt. 81-1 and Dkt. 81-2, and he does not identify any questions he was unable to ask. Regardless, in concluding that defendants are entitled to summary judgment, I did not consider any of defendants' testimony unless it was undisputed. Thus, challenging that testimony in a deposition would not have helped LaBrec prove his claim.

The lack of counsel is not the reason LaBrec lost this case. The fundamental problem was that, even under LaBrec's view of the facts, defendants did not have notice of a substantial risk of serious harm to LaBrec's safety. No matter how skilled a lawyer is, she cannot give her client better facts.

I recognize that a determination regarding prejudice generally is reserved for appellate review. *Pruitt,* 503 F.3d at 659. However, in a case like this one in which the parties have fully briefed a motion for summary judgment and both sides have had a fair opportunity to present their case, it would be irresponsible to ignore the evidence available to the court. Appointing counsel in a case like this one in which there is no reasonable possibility that a lawyer would make a difference in the outcome would be a waste of resources for all involved. Accordingly, I will deny LaBrec's motion for assistance in recruiting counsel.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants Jason Chatman, Joshua Craft, Dustin Meeker, Lindsay Walker, and Debra Wilson, Dkt. 48, is GRANTED as to plaintiff Matthew LaBrec's claims under the Eighth Amendment.

2. In accordance with 28 U.S.C. § 1367(c)(3), LaBrec's state-law claims are DISMISSED without prejudice to LaBrec's refiling them in state court.

3. LaBrec's motion for assistance in recruiting counsel, Dkt. 54, motion for substitution, Dkt. 73, and motion for an extension of time, Dkt. 83, are DENIED.

4. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered February 27, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge